Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9414 | **DATE** | 12/15/2003 |
| **CASE TITLE** | WOLDMAN, et al. vs. COUNTY LINE CARTAGE, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Cross Motions for Summary Judgment (docs. 20, 22)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' Motion for Summary Judgment [20-1] is DENIED as to both counts. Defendant's Motion for Summary Judgment [22-1] is GRANTED as to both counts. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 16 2003 | |
| | Notified counsel by telephone. | date docketed | **33** |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | 03 DEC 15 AM 4:13  U.S. DISTRICT COURT CLERK  Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM D. WOLDMAN, *et al.*,   )
                                )
    Plaintiffs,            )
                                )  No. 01 C 9414
    v.                      )
                                )  Judge William J. Hibbler
COUNTY LINE CARTAGE, INC.       )
A Corporation,                  )
                                )
    Defendant               )

DEC 1 8 2003

## MEMORANDUM OPINION AND ORDER

The Plaintiffs ("Funds") are the trustees of two different benefit funds, both of which involve the Local No. 731 Union ("Local 731"). The Defendant, County Line Cartage, Inc., is a trucking company and a party to a collective bargaining agreement with Local 731, known as the Area Construction Agreement ("ACA"). Part of the ACA requires County Line to make fringe benefit contributions to the Funds, and the Funds allege that County Line failed to make all necessary contributions. Accordingly, the Funds sued to recover these contributions pursuant to both the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132, 1145, and the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185. After the completion of discovery, the parties filed Cross-Motions for Summary Judgment.

### I.    Factual Background

Plaintiffs are trustees of two employee welfare benefit funds: the Health and Welfare Fund of the Excavating, Grading, and Asphalt Craft Local No. 731; and the Local 731, I.B. of T., Excavators and Pavers Pension Trust Fund. County Line is a trucking company that provides dump

1

truck services to paving and construction businesses. County Line and Local 731 were parties to the ACA, which was effective between April 1, 1995, and May 31, 2000. Pursuant to Articles IX and X of the ACA, County Line was required to contribute to the benefit funds at specified rates for each hour worked by employees covered by the ACA. Article III of the ACA governs subcontracting work performed on and off the job site. The parties agree that the work performed by these subcontractors was off the job site. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8. In addition, the parties agree that County line failed to give the union proper notice of the subcontracts. The relevant provisions of Article III provide:

> In order to protect the wages, working conditions and job opportunities of workers employed under this Agreement, the Employer [County Line] agrees that when subcontracting work covered by this Agreement which is to be performed within the geographical area covered by this Agreement but which is not to be performed at the site of construction, alteration, painting or repair of the building, road or other work, he will subcontract such work only to an Employer or person who agrees that the persons performing such work will work in accordance with the schedule of hours and will receive not less than the wages and economic benefits provided in this Agreement including holidays, vacations, premiums, overtime, health and welfare and pension contributions or benefits or their equivalent and any other programs or contributions required by this Agreement and who further agrees to submit any grievance or disputes concerning his performance or compliance with such undertaking to the procedures set forth in Article 6 of this Agreement.

Section 3.2(a). Additionally, Section 3.2(b) provides that:

> The Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering into such subcontract and shall specify the name and address of the subcontractor. Any Employer who gives such notice and requires the subcontractor to agree to comply with and observe the provisions of Section 3.1 hereof with respect to job site work and Section 3.2 hereof with respect to work performed other than at the job site shall not be liable for any delinquency by such subcontractor in the payment of any wages, fringes, benefits or contributions provided herein expect as provided hereinafter.

In addition to filing 56.1 Statements, the parties filed a Stipulation, which states that the

2

parties agree that: (1) the hours shown on the audit report between January 1, 1998, and July 31, 2000, are correct; (2) County Line did not make fringe benefit contributions on behalf of the 37 subcontractors; (3) the 37 entities and/or individuals did not agree that the persons performing the work would work in accordance with the schedule of hours and would receive not less than the wages and economic benefits provided in the ACA; (4) County Line subcontracted work to the 37 entities and/or individuals and did not require as part of those subcontracts that the persons performing the work would work in accordance with the schedule of hours and would receive not less than the wages and economic benefits provided in the ACA; and (5) County Line did not provide written notice to Local 731 of any subcontracts within five days of County Line entering into them.

Both of the Funds' claims for damages – under ERISA and the LMRA – are based on their claim that County Line breached the ACA. In their Motion for Summary Judgment, the Funds allege that County Line failed to contribute to the Funds for 37 subcontractors (listed in Pl.'s 56.1 Stmt. ¶ 11), and they are asking the Court to decide as a matter of law that the Funds are entitled to $275.788.75 as a result. County Line claims that the ACA does not require benefit contributions based on the work of subcontractors performed off the job site and that the Funds thus do not have standing to sue under the relevant ACA provisions. In the alternative, County Line argues that even if the Funds have standing to sue: (1) County Line did not breach the ACA; and (2) even if County Line did breach the ACA, the Funds are not entitled to any damages as a result and thus County Line should be granted judgment as a matter of law.

## II.     Standard of Review

Summary judgment is appropriate only when the record, viewed in the light most favorable

3

to the non-moving party, shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Self-serving assertions, without factual support in the record, cannot be used to defeat a motion for summary judgment. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 942 (7th Cir. 1997). Instead, the party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The role of this Court is to determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## III. Plaintiffs have standing, as they are intended third-party beneficiaries of the ACA.

As a preliminary matter, County Line asserts that the Funds lack standing to bring this suit. Since the Funds are not a party to the ACA, they would have to be intended third-party beneficiaries of the ACA to have standing. *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995). There may be both intended and incidental third-party beneficiaries to a contract, but only intended third-party beneficiaries may sue upon a contract. An intended third party beneficiary is one who, although not a party to the contract, is intended by the contracting parties to benefit from the contract. *United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003). An incidental beneficiary is one who is not a party to the contract and who receives a benefit from it that was *not* intended by the contracting parties. *Id. See* Restatement (Second) of Contracts § 302 (1981). To resolve whether a party is an intended or an incidental beneficiary, "the intent of the parties based on the contract as a whole as well as the understandings between the parties at the time of the contract's execution" must be determined. *United Logistics*, 319 F.3d at 930.

4

Here, both parties agree that "multi-employer fringe benefit funds, to which an employer is obligated to contribute under a collective bargaining agreement, are third-party beneficiaries to the collective bargaining agreement." Def.'s Resp. to Pl.'s Mot. for Summ. J. at 2. The Seventh Circuit agrees. *See, e.g., Moriarty v. Pepper*, 256 F.3d 554, 556 (7th Cir. 2001), and *Ron Tirapelli Ford, Inc. v. NLRB*, 987 F.2d 433, 444 n.15 (7th Cir. 1993). Thus, since Sections IX and X of the ACA require County Line to contribute to the Funds for employees, the Funds are intended third-party beneficiaries of the ACA.

County Line argues, however, that the Funds are only third-party beneficiaries of the contract provisions requiring contributions to them. Thus, County Line argues, as Section 3.2 does not require contributions to the Funds, the Funds are not third-party beneficiaries of Section 3.2. County Line, however, does not cite anything in favor of its proposition that a party can be a third-party beneficiary of only certain provisions of a contract. County Line argues that the existence of an exclusive grievance and arbitration provision in the ACA precludes the Funds from bringing suit as third party beneficiaries. The Seventh Circuit, however, has specifically held that benefit funds, as third party beneficiaries, may bring suit without following the arbitration procedures in a collective bargaining agreement, which by their terms apply only to the union and the employer. *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 609 (7th Cir. 2002).

Moreover, the Funds must be more than third-party beneficiaries of only certain provisions of the ACA because "the intent of the parties based on the contract as a whole" must be analyzed to determine whether a party is an intended or merely an incidental third-party beneficiary of a contract. *United Logistics*, 319 F.3d at 930. Therefore, either the Funds are third-party beneficiaries of the ACA as a whole, or the Funds are not intended third-party beneficiaries of the ACA. This is

5

consistent with general Illinois contract law, which holds that a contract must be construed as a whole. *See, e.g., Miniat v. Ed Miniat, Inc.*, 315 F.3d 712, 715 (7th Cir. 2002). As County Line concedes, as it must, that the Funds are third-party beneficiaries to some of the provisions of the ACA, this Court finds that they are third-party beneficiaries of the ACA as a whole. Consequently, the Funds have standing to assert their claims for breach of the ACA under the LMRA and ERISA.

## IV.    County Line breached the ACA

Next County Line argues – without providing any factual support – that under the terms of Section 3.2(a) of the ACA, the subcontractors may have been provided with the "equivalent" of the schedule of hours and wages and economic benefits required to be provided by the ACA. Self-serving assertions, however, without factual support in the record, cannot be used to defeat a motion for summary judgment. *Weeks*, 126 F.3d at 942. Looking past County Line's self-serving assertions that the subcontractors might have received equivalent benefits, the Court finds that County Line has admitted that it breached the terms of the ACA in several respects. County Line admits that it: (1) subcontracted work to entities and/or individuals *who did not agree* that the persons performing the work would work in accordance with the schedule of hours and would receive not less than the wages and economic benefits provided in the ACA; (2) subcontracted work to entities and/or individuals *and did not require as part of those subcontracts* that the persons performing the work would work in accordance with the schedule of hours and would receive not less than the wages and economic benefits provided in the ACA; and (3) did not provide written notice to Local 731 of any subcontracts within five days of County Line entering into them. The first two admissions constitute breaches of Section 3.2(a) of the ACA, while the third admission constitutes a breach of Section 3.2(b) of the ACA.

6

## V. ERISA Claim

ERISA provides the Funds with a right to sue to enforce obligations due to them under the ACA. ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145 (2000). The Funds claim that County Line was obligated to make contributions to the benefit plans for the subcontractors at issue, but County Line disputes that it is required to make contributions on behalf of off-site subcontractors. The Funds point to no provision in the contract requiring County Line to contribute to the benefit plans for subcontractors hired to work off-site. Under ERISA, "[e]mployers are required to make contributions only on behalf of those employees indicated by the agreements." *Cent. States, Southeast and Southwest Areas Pension Fund v. Hartlage Truck Serv., Inc.*, 991 F.2d 1357, 1360 (7th Cir. 1993). If the agreements are unambiguous, courts must enforce the terms as defined in the agreement. *Id.* at 1361 (citing *Indiana State Council of Roofers v. Adams Roofing Co.*, 753 F.2d 561 (7th Cir. 1985)).

Section 3.2(a) of the ACA unambiguously requires County Line to subcontract only to those who agree that the persons will work in accordance with the ACA's schedule of hours, wages and benefits. Section 3.2(a), however, does not mention any requirement of contributions to Funds for subcontractors. This is in stark contrast to Articles IX and X, which explicitly require contribution to the Funds on behalf of employees. The Funds do not offer, and this Court would not consider, evidence extrinsic to this unambiguous contract. *Much v. Pacific Mut. Life Ins. Co.*, 266 F.3d 637, 643 (7th Cir. 2001) (if the language of the contract itself unambiguously answers the question at

issue, the inquiry is over). Because ERISA limits a fund's recovery to contributions that the employer is "obligated" to make under the ACA and that are indicated in the ACA, County Line did not violate ERISA by not contributing to the funds for these subcontractors. *See Hartlage*, 991 F.2d at 1360; *Adams Roofing Co.*, 753 F.2d at 564. Therefore, the Funds are not entitled to contributions from County Line as a result of its breach. County Line's Motion for Summary Judgment as to the ERISA claim is GRANTED and the Funds' Motion for Summary Judgment as to its ERISA claim is DENIED.

## VI.   LMRA Claim

Under the LMRA, the Funds claim that because County Line breached the ACA by subcontracting work at wage and benefit rates less than allowable by the ACA, the Funds are entitled to damages in the amount of the fringe benefit costs for each hour worked by the subcontractors as found due in the audit findings. Pl.'s Mot. for Summ. J. at 10, 11. The LMRA, 29 U.S.C. § 185 (2000), provides that: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185. Courts have held that a benefit fund's LMRA claim might stand where its ERISA claim does not because the LMRA provides a cause of action for breach of collective bargaining agreements. *Adams Roofing*, 753 F.2d at 563 n.1.

This Court has found that the ACA did not require fringe benefit contributions to made on behalf of subcontractors that worked off-site. Therefore, what the Funds are actually seeking as damages are the contributions the Funds would have been paid had County Line hired employees

8

rather than subcontractors. The Funds are not seeking compensatory damages, which would be damages resulting from the amount of fringe benefit costs that the Funds would have been paid had County Line not breached the ACA. Indeed, the Funds would not be entitled to compensatory damages because if County Line had not breached the ACA, that is, if County Line had paid the subcontractors adequate wages and benefits, the Funds would be in no better position in terms of contributions from County Line, because County Line was not required to contribute to the Funds for off-site subcontractors. Because "an employer can be criminally liable for making payments to a trust fund in violation of the provisions of the controlling written agreement," this Court will presume that County Line would not have contributed to the Funds if not required to do so. *Adams Roofing*, 753 F.2d at 564.

The Funds' argument that they are entitled to contributions the Funds would have been paid had County Line hired employees rather than subcontractors is without merit. The Seventh Circuit case that the Funds cite is inapposite. The Funds cite *Chicago Painters and Decorators Pension, Health and Welfare and Deferred Sav. Plan Trust Funds v. Karr Bros., Inc.*, 755 F.2d 1285 (7th Cir. 1985), as supporting authority for their claim for damages. In *Chicago Painters*, as in our case, the benefit fund was a party to a union collective bargaining agreement, and the agreement required the employer to pay a specified amount of money into the funds for each hour worked by employees covered by the agreement. *Chicago Painters*, 755 F.2d at 1287. However, the similarity between the instant case and *Chicago Painters* ends there. The agreement in *Chicago Painters* prohibited the employer from subletting any work. Notwithstanding this agreement, the employer hired subcontractors, and did not make trust fund contributions on their behalf. Therefore, the Seventh Circuit affirmed the trial court's decision to require the employer to pay the funds in the amount that

the employer would have been required to contribute to the trust funds had it followed the terms of the agreement. *Id.* at 1287. The Seventh Circuit explained its reasoning: "[t]his remedy comports with the principle that breach of contract damages should place the aggrieved party in the place he would have been in had the breach not occurred." *Chicago Painters.*, 755 F.2d at 1290.

In *Chicago Painters*, a breach of the agreement damaged the funds because if the breach had not occurred, the employer would have hired employees on whose behalf it would have had to contribute to the funds. Unlike *Chicago Painters*, in our case the ACA does not prohibit County Line from hiring subcontractors, and the ACA does not require contribution to the Funds on behalf of subcontractors that work off-site. Therefore, the Funds would not have been in a different place had the breach not occurred, because they would not have been entitled to contributions even if County Line had not breached the ACA. In addition, the ACA does not independently require contribution to the Funds in the event County Line breached the ACA by not paying the minimal level required by Section 3.2(a). Although the Court does not condone County Line's actions in breach of the ACA, not every breach of a collective bargaining agreement gives the benefit funds the right to recover.

Moreover, this Court declines to follow the district court case cited by the Funds. In *National Wrecking*, Magistrate Judge Bernard Weisberg stated in dicta that under a subcontractor clause similar to the one at issue in our case, damages for breach of the subcontracting clause may take the form of contributions to the funds for amounts that otherwise might never have been paid to them. Judge Weisberg reasoned that these damages would not be the "usual award of contractual damages" in that they are not compensation for damages actually incurred by the funds. *Laborers' Pension Fund v. Nat'l Wrecking Co.*, No. 90 C 5499, 1991 U.S. Dist. LEXIS 13131, at *11 (N.D. Ill. Sept.

15, 1994); *Laborers' Pension Fund v. Nat'l Wrecking Co.*, No. 90 C 5499, 1991 U.S. Dist. LEXIS 13131, at *25-30 (N.D. Ill. Sept. 30, 1991). Judge Weisberg decided, however, that this form of relief could be implied by a court as part of a remedy for violation of some contractual promise other than a promise to make contributions to the funds. *Id.*

Neither the Funds nor Judge Weisberg, however, cite any authority for this type of non-compensatory remedy that is not normally available for contract damages. To the contrary, "[a] party cannot be awarded damages that would put him in a better position than if the contract had been completely carried out." *Dr. Franklin Perkins Sch. v. Freeman*, 741 F.2d 1503, 1519 (7th Cir. 1984). "[A] plaintiff is not entitled to a windfall." *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266, 278 (7th Cir. 1996). Accordingly, the Funds are not entitled to contributions from County Line as a result of its breach, and County Line's Motion for Summary Judgment regarding the LMRA claim is GRANTED, and the Funds' Motion for Summary Judgment as to its LMRA claim is DENIED.

## VII. Conclusion

Therefore, this Court concludes as a matter of law that the Funds are not entitled to contributions from County Line as a result of it breaching the ACA. County Line's Motion for Summary Judgment is GRANTED as to both counts, and the Funds' Motion for Summary Judgment is DENIED as to both counts.

IT IS SO ORDERED.

12/15/03
Dated

The Honorable William J. Hibbler
United States District Court

11